1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12 SUSANA ISLAS DOOMS,                    CASE NO. CV F 11-0352 LJO DLB

13              Plaintiff,                **ORDER ON OCWEN, MERS AND FREDDIE MAC'S F.R.Civ.P. 12(b)(6) MOTION TO**

14       vs.                             **DISMISS**
                                         (Doc. 6.)
15 FEDERAL HOME LOAN MORTGAGE
   CORPORATION, et al.,
16
              Defendants.
17 _____/

18                              **INTRODUCTION**

19       Several defendants[1] seek to dismiss as legally barred and inadequately pled plaintiff Susana Islas

20 Dooms' ("Ms. Dooms") claims arising from her home loan default, failed loan modification, and

21 trustee's sale of her Fresno residence ("property").  This Court considered the moving defendants'

22 F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 25, 2011 hearing, pursuant

23 to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action against the

24 moving defendants.

25

26       [1]       This order addresses the F.R.Civ.P. 12(b)(6) motion to dismiss brought by defendants Ocwen Loan
   Servicing, LLC ("Ocwen"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Federal Home Loan Mortgage
27 Corporation ("Freddie Mac").  This Court will refer to Ocwen, MERS and Freddie Mac collectively as the "moving
   defendants."  Defendant Bank of America, N.A., successor in interest to Countrywide Bank, FSB ("Countrywide"), filed its
28 separate F.R.Civ.P. 12(b)(6) motion to dismiss which this Court addresses in a separate order.

1

**BACKGROUND**[2]

2

**Summary**

3   The complaint alleges that Ms. Dooms was induced not to make home loan payments to qualify

4   her for loan modification and was assured that the property would not be subject to foreclosure.  Ms.

5   Dooms did not obtain a loan modification, and through foreclosure proceedings, the property was sold

6   at a trustee's sale.  The complaint alleges against the moving defendants, Countrywide and defendant

7   Cal-Western Reconveyance Corporation ("Cal-Western Reconveyance")[3] California common law and

8   statutory claims which will be discussed below.  The complaint seeks to set aside the trustee's sale and

9   to reconvey the property to Ms. Dooms.

10   **Ms. Dooms' Loans**

11   Ms. Dooms obtained from Plaza Homemortgage, Inc. a December 21, 2006 loan for $310,000

12   and secured by a Deed of Trust ("first DOT") on the property.  The first DOT identifies Chicago Title

13   as trustee and MERS as beneficiary and was recorded on December 28, 2006.[4]

14   In August 2007, Ms. Dooms received a $55,000 line of credit from Countrywide and secured by

15   a Deed of Trust and Assignment of Rents ("second DOT") on the property.  The second DOT was

16   recorded on August 15, 2007.

17   **Loan Modification Attempts**

18   In 2007, Ms. Dooms "experienced financial difficulties."  In early 2008, Ms. Dooms requested

19   a loan modification from Countrywide for a reduced monthly mortgage payment.  In June 2008,

20   Countrywide advised Ms. Dooms that to qualify for "any available loan modification program," Ms.

21   Dooms must be "in default for three months."  Ms. Dooms stopped making her mortgage payments for

22   July, August and September 2008.

23   In September 2008, Ms. Dooms telephoned Countrywide and was informed that Countrywide

24

25   _____

[2]   The factual recitation is derived generally from Ms. Dooms' operative Verified Complaint ("complaint"), documents attached to the complaint, and matters of which this Court may take judicial notice.

26   [3]   The complaint makes numerous references to "Defendants."  This Court presumes that such reference is to the moving defendants, Countrywide and Cal-Western Reconveyance collectively.

27

28   [4]   All documents pertaining to Ms. Dooms' loan and foreclosure proceedings were recorded with the Fresno County Recorder.

"had no record of her loan because her loan was sold to Ocwen." Ocwen confirmed taking over Ms. Dooms' loan but lacked a record of her loan modification request. Ocwen informed Ms. Dooms to request loan modification through Ocwen's website, and Ms. Dooms submitted three online requests for loan modification. Ms. Dooms later mailed a loan modification package to Ocwen. In following months during 2009, Ms. Dooms inquired of Ocwen about her loan modification and faxed "the same documents at least five times before Ocwen would confirm receipt."

**Foreclosure Proceedings**

By an Assignment of Deed of Trust ("Ocwen DOT assignment") dated April 1, 2009, MERS assigned to Ocwen all beneficial interest under the first DOT. The Ocwen DOT assignment was notarized on April 19, 2010 and recorded on April 22, 2010.

In July 2008, Ms. Dooms defaulted on her first DOT loan. On April 23, 2009, Cal-Western Reconveyance for Ocwen recorded a Notice of Default which noted that Ms. Dooms was $17,451.66 in arrears as of April 22, 2009 on her first DOT loan.

On June 9, 2009, Cal-Western Reconveyance recorded a Substitution of Trustee ("trustee substitution") by which MERS substituted Cal-Western Reconveyance as trustee under the first DOT. MERS executed the trustee substitution on April 1, 2009.

On November 17, 2009, Cal-Western Reconveyance recorded a Notice of Trustee's Sale ('trustee's sale notice") to set a December 3, 2009 sale. Cal-Western Reconveyance executed the trustee's sale notice on November 3, 2009. The trustee's sale notice was not posted on the property.

By an Assignment of Deed of Trust California ("Freddie Mac DOT assignment") executed and notarized on January 4, 2010, Ocwen assigned to Freddie Mac its interest in the first DOT. The Freddie Mac DOT assignment was recorded on May 7, 2010 and states that it "is made and entered into as of the 16th day of January 2009." An allonge is attached to the Freddie Mac DOT assignment to transfer Ms. Dooms' $310,000 promissory note to Freddie Mac. The allonge states that its effective date is January 16, 2009.

Ms. Dooms telephoned Ocwen regarding the trustee's sale notice and "was assured by an Ocwen representative that her Property would not be sold because she was in a loan modification process." Each time the trustee's sale was postponed, Ms. Dooms "was assured by Ocwen that her Property would

not be sold, and it was not." After three postponements, the property was set for an April 26, 2010 sale.

On April 17, 2010, "Scott" at Ocwen informed Ms. Dooms that she "qualified for a loan modification with his department" and that "he would make sure that the Property was taken off of calendar for the sale scheduled on April 26, 2010."

Ocwen's April 17, 2010 letter informed Ms. Dooms that she had until May 17, 2010 to submit documents to support her loan modification.

On April 26, 2010, Ocwen sold the property to Freddie Mac. A Trustee's Deed Upon Sale was recorded on May 7, 2010.

Ms. Dooms "would never have defaulted on her mortgage had she known her home would be foreclosed" in that her father "was ready, willing, and able to cure her default." Ms. Dooms "defaulted on her mortgage payments for the sole purpose of qualifying for a loan modification program, as advised by Countrywide and Ocwen."

### Ms. Dooms' Claims

The complaint alleges against the moving defendants fourteen California common law and statutory claims which will be addressed below. The complaint seeks to enjoin defendants from evicting Ms. Dooms and from transferring the property. The complaint seeks to cancel the Trustee's Deed Upon Sale, set aside the foreclosure and reconvey the property's title to Ms. Dooms. The complaint seeks recovery for Ms. Dooms' "mental anguish" and punitive damages.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The moving defendants challenge the complaint's claims as legally barred and lacking elements to support claims.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

4

1   prior to service of process on defendants).

2       "When a federal court reviews the sufficiency of a complaint, before the reception of any

3   evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

4   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

5   claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

6   Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

7   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

8   theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

9   Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

10      In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

11  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

12  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

13  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

14  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead

15  Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

16  assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.

17  Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can

18  prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

19  been alleged." *Associated General Contractors of California, Inc. v. California State Council of

20  Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

21  "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon

22  Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

23      A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

24  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell

25  Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

26  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

27  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing

28  Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

1   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

2   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

3   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

4       In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

5   explained:

6           . . . a complaint must contain sufficient factual matter, accepted as true, to "state
        a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
7       plaintiff pleads factual content that allows the court to draw the reasonable inference that
        the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
8       akin to a "probability requirement," but it asks for more than a sheer possibility that a
        defendant has acted unlawfully.  (Citations omitted.)

9

10      After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

11  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

12  must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

13  F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

14      The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

15          First, the tenet that a court must accept as true all of the allegations contained in
        a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
16      a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
        only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
17      . Determining whether a complaint states a plausible claim for relief will . . . be a
        context-specific task that requires the reviewing court to draw on its judicial experience
18      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
        more than the mere possibility of misconduct, the complaint has alleged – but it has not
19      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

20          In keeping with these principles a court considering a motion to dismiss can
        choose to begin by identifying pleadings that, because they are no more than conclusions,
21      are not entitled to the assumption of truth. While legal conclusions can provide the
        framework of a complaint, they must be supported by factual allegations. When there are
22      well-pleaded factual allegations, a court should assume their veracity and then determine
        whether they plausibly give rise to an entitlement to relief.

23

24  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

25      For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

26  complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

27  Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston*

28  *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.  In addition, a

"court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).   A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.3d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.   In addition, the complaint's claims are susceptible to defenses.

### Breach Of Contract

The complaint's (first) breach of contract claim alleges that "Defendants were required to enroll [Ms. Dooms] in a loan modification program so long as [Ms. Dooms] defaulted on her mortgage for three months and provided all the documentation." The claim further alleges that "Defendants" breached agreements by failing to:

    1.    Process Ms. Dooms' loan modification applications;

---

[5]   "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

2.      Allow Ms. Dooms to cure her default;

3.      Allow Ms. Dooms up to May 17, 2010 to submit documents to support loan modification; and

4.      Cancel the foreclosure sale to result in the trustee's sale to Freddie Mac.

### Elements

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'"   *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008).  "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'"   *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

"As to the contract, where a written instrument is the foundation of a cause of action, it may be pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference." *Byrne v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d 218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient." *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

The moving defendants attack the complaint's failure to identify their breach of a particular contract.  The moving defendants note the complaint's limited reference to Ocwen's April 17, 2010 letter which is neither a loan modification nor forbearance agreement.

The complaint lacks facts of the moving defendant's alleged breach of a contract.  The complaint alleges no specific contract terms.  At best, the complaint references preliminary discussions regarding loan modification and not a breach of identified contract terms.

### Statute Of Frauds

The moving defendants challenge an alleged oral loan modification as barred by the statute of frauds.

"A modification of a contract is a change in the obligations of a party by a subsequent mutual

8

agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d 275. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275.

The moving defendants are correct that "an alleged offer for a loan modification is subject to the statute of frauds since it seeks to modify a deed of trust, which is subject to the statute of frauds." The complaint fails to identify a written modification and fails to allege that the moving defendants signed an agreement. The statue of frauds bars the breach of contract claim which is subject to dismissal.

## Detrimental Reliance And Promissory Estoppel

The complaint's (second) detrimental reliance claim alleges that in breach of "Defendants' promises regarding [Ms. Dooms'] loan modification, [Ms. Dooms] Property was sold in a trustee's sale." The claim continues that had Ms. Dooms "known that Defendants would proceed with the foreclosure sale, she would have borrowed the money necessary to cure the default from her dad and would have prevented the foreclosure sale of her home." The claim further alleges that Ms. Dooms did not cure the default due to her "reasonable reliance on Defendants' promises regarding her loan modification."

The complaint's (fourth) promissory estoppel claim alleges that "Defendants" made statements/promises regarding the loan modification process, including:

1. Advising Ms. Dooms to default on her mortgage for three months;

2. Promising to process Ms. Dooms' loan modification applications;

3. Promising to forebear foreclosure pending Ms. Dooms' loan modification application;

4. Promising not to sell the property on April 26, 2010; and

5. Promising to give Ms. Dooms until May 17, 2010 to provide further documentation to support loan modification.

The claim continues that "Defendants . . . refuse to honor their promises" to Ms. Dooms.

9

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Federal Savings & Loan Assn.,* 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976). "Promissory estoppel is a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority,* 23 Cal.4th 305, 310, 96 Cal.Rptr.2d 747 (2000) (citation and internal quotations omitted).

The moving defendants fault the complaint's failure to identify a "clear and unambiguous" promise. The moving defendants characterize as "generic and vague" the complaint's references to loan modification with three defaulted payments and forbearance during the loan modification process. The moving defendants criticize the absence of specific allegations "as to who said what, when, what were the terms, how long this alleged option was available and so on."

The moving defendants further point to inadequate allegations of Ms. Dooms' "reliance" limited to her not making mortgage payments and sending several loan modification packages. The moving defendants further question Ms. Dooms' reasonable reliance in that the complaint reflects that she was on notice for more than year prior to the trustee's sale that her loan was in default and had other avenues to avoid foreclosure.

The moving defendants are correct that the complaint lacks facts of a clear and unambiguous promise and reasonable reliance to support the detrimental reliance and promissory estoppel claims. The complaint ties alleged promises to no particular defendant or representative of a defendant. The complaint merely alludes to an unidentified Ocwen representative's statement that the property would not be sold during loan modification, despite statutory of frauds requirements. The complaint's exhibits defy such notion given that they reveal action taken to conduct the foreclosure sale. Lastly, the complaint points to no consideration on Ms. Dooms part to support promissory estoppel and indeed reflects that she purposely stopped making mortgage payments to render her unsympathetic in a court of equity.

/ / /

10

## **Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

The complaint's third claim alleges that "Defendants" breached the "implied promise of good faith and fair dealing" by:

1.   Advising Ms. Dooms that she must be in default for three months to qualify for loan modification;

2.   Failing to process Ms. Dooms for loan modification;

3.   Failing to consider Ms. Dooms' documents and information for loan modification;

4.   Failing to allow Ms. Dooms up to May 17, 2010 to submit documents to support loan modification;

5.   Selling the property prior to May 17, 2010; and

6.   Failing to provide Ms. Dooms an opportunity to cure her default prior to the property's sale.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031, 14 Cal.Rptr.2d 335 (1992).  "There is no obligation to deal fairly or in good faith absent an existing contract." *Racine & Laramie*, 11 Cal.App.4th at 1032, 14 Cal.Rptr.2d 335.

A breach of implied covenant of good faith and fair dealing claim "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the

contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted).  The "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992).  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008).  "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

The moving defendants fault the compliant's failure to allege contract terms, defendants who are parties to such contract, and breach.  The moving defendant challenge the complaint to allege a breach of implied covenant of good faith and fair dealing claim in the absence of a breach of contract claim.

The moving defendants are correct.  The complaint lacks a specific contractual obligation on which to premise a breach of an implied covenant claim.  In the absence of a tangible breach of contract claim, the complaint lacks facts to demonstrate the moving defendants' failure or refusal to discharge contractual responsibilities, prompted by a conscious and deliberate acts.  The implied covenant claim improperly seeks to impose on the moving defendants obligations beyond the scope of a purported contract.  Moreover, the first DOT entitled the moving defendants to pursue foreclosure and thus no implied covenant prohibited them from doing that which they were entitled to do.  The implied covenant claim fails.

### Negligence

The complaint's (fifth) negligence claim alleges that "Defendants" breached duties of care to:

1.   Process Ms. Dooms' loan modification applications;

2.   Halt foreclosure activities pending Ms. Dooms' loan modification;

3.   Allow Ms. Dooms' to cure default:

4.   Refrain from selling the property on April 26, 2010; and

5.   Allow Ms. Dooms up to May 17, 2010 to provide further documentation for loan

12

1    modification.

2    The moving defendants argue that their relationships as a lender or loan servicer with Ms. Dooms

3 gave rise to no actionable duty of care.  The moving defendants contend the complaint lacks facts to

4 support a duty to offer a loan modification.

5    "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

6 breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

7 *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation

8 omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

9 establishing a claim for negligence."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

10 1089, 1095, 283 Cal.Rptr. 53 (1991).  "[A]bsent a duty, the defendant's care, or lack of care, is

11 irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56

12 Cal.Rptr.2d 756 (1996).  "The existence of a legal duty to use reasonable care in a particular factual

13 situation is a question of law for the court to decide."  *Vasquez v. Residential Investments, Inc.,* 118

14 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

15    "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

16 in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

17 person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

18 actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

19 *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

20 (1997).

21    There is no actionable duty between a lender and borrower in that loan transactions are arms-

22 length.  A lender "owes no duty of care to the [borrowers] in approving their loan.  Liability to a

23 borrower for negligence arises only when the lender 'actively participates' in the financed enterprise

24 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161

25 Cal.Rptr. 516 (1980) (citing several cases).  "[A]s a general rule, a financial institution owes no duty of

26 care to a borrower when the institution's involvement in the loan transaction does not exceed the scope

27 of its conventional role as a mere lender of money."  *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr.

28 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no

lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had").  "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

The moving defendants are correct that a negligence claim based on their roles as lender and loan servicer fails in the absence of a duty to forego foreclosure or to provide a loan modification.  The complaint lacks facts to support an actionable duty to impose on the moving defendants.  "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan").  "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).  The moving defendants owed no duty of care to Ms. Dooms arising from her default, property foreclosure, and loan modification attempts.  The complaint lacks facts of special circumstances to impose duties on the moving defendants in that the complaint depicts an arms-length transaction, nothing more.  The complaint fails to substantiate a special lending relationship or an actionable breach of duty to substantiate a negligence claim.  The negligence claim fails.

**Misrepresentation And Fraud**

The complaint's (sixth) fraudulent misrepresentation claim alleges that "Defendants" falsely:

1.      Advised Ms. Dooms that she must default her mortgage for three months to qualify for loan modification;

14

1    2.    Promised to process Ms. Dooms' loan modification application;

2    3.    Promised to forego foreclosure pending Ms. Dooms' loan modification;

3    4.    Promised not to sell the property on April 26, 2010; and

4    5.    Promised to give Ms. Dooms up to May 17, 2010 to provide further documentation to

5         support loan modification.

6    The complaint's (seventh) claim alleges that "Defendants" intended to defraud Ms. Dooms of

7    the property by "back-dating public documents related to the Property" and preventing Ms. Dooms "to

8    cure the default before selling the Property on April 26, 2010."

9    The moving defendants attack the fraud claims as lacking sufficient particularity to satisfy

10   F.R.Civ.P. 9(b).

11   The elements of a California fraud claim are: (1) misrepresentation (false representation,

12   concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

13   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

14   631, 638, 49 Cal.Rptr.2d 377 (1996).   The same elements comprise a cause of action for negligent

15   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

16   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004).

17   "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

18   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

19   156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

20   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

21   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

22   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

23   will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

24   Cal.Rptr. 355 (1986).

25   / / /

26   / / /

27   / / /

28   / / /

### *Particularity Pleading Standard*

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[6] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[7] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have

---

[6]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[7]   "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9ᵗʰ Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9ᵗʰ Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9ᵗʰ Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations as to what the moving defendants, through specifically identified and authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct. The moving defendants are correct to challenge Ms. Dooms' valid reliance given that the complaint indicates that she intentionally discontinued her loan payments despite her well documented legal obligations to make

17

1    monthly payments.  The complaint relies on mere notions of false advise and promises regarding

2    foreclosure and loan modification and defrauding Ms. Dooms of her property.  Given the number of

3    defendants and their differing roles, such allegations are insufficient to warrant dismissal of the

4    complaint's claims sounding in fraud.

5                                      **Wrongful Foreclosure**

6           The complaint's eighth claim challenges "Defendants'" compliance with California's foreclosure

7    statutes in that:

8           1.    Since "MERS already assigned and transferred title to Ocwen on April 1, 2009, MERS

9                 could not then substitute Cal-Western as the new trustee on June 9, 2009";

10          2.    Defendants did not comply with California Civil Code section 2923.5 ("section 2923.5")

11                because "Defendants never contacted [Ms. Dooms] 'to explore options' for her to avoid

12                foreclosure" and Ms. Dooms "was never given an opportunity to cure the default"; and

13          3.    The trustee's sale notice was not posted on the property to comply with California Civil

14                Code section 2924.8(a) ("section 2924.8(a)").

15   The claim concludes that the default notice and trustee's sale notice are "invalid and void."

16                                     *Presumption Of Validity*

17          Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

18   trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

19   in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

20   thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

21   the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

22   deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

23   *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

24          If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

25   may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

26   286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

27   applicable California Civil Code sections:

28                The comprehensive statutory framework established to govern nonjudicial

18

1
2
3

foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"  *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity."  *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked."  *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).

A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust."  *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).  As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

*Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

With presumption of validity in mind, this Court turns to the moving defendants' challenges to the complaint's claims of statutory violations.

### *Statutory Requirements*

Section 2923.5(a)(1) prohibits a mortgagee, trustee, beneficiary or authorized agent to "file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

The moving defendants point out that the complaint alleges that:

1.  Based on Countrywide's advice, Ms. Dooms stopped making her summer 2008 mortgage payments; and

2.  Ms. Dooms spoke with Ocwen representatives about loan modification during late 2008 and early 2009, prior to the April 23, 2009 default notice filing.

The moving defendants further point to the default notice's declaration of section 2923.5 compliance. The moving defendants reference the following from the Trustee's Deed Upon Sale:

> This conveyance is made . . . pursuant to the Notice of Default recorded April 23,

1   2009 . . . Trustee having complied with all applicable statutory requirements of the State
2   of California and performed all duties required by said Deed of Trust, including, among
    other things, as applicable, the mailing of copies of notices or the publication of a copy
3   of the notice of default or the personal delivery of the copy of the notice of default or the
    posting of copies of sale or publication of a copy thereof.

4   The moving defendants conclude that "Defendants have declared their compliance" with California Civil

5   Code sections 2923.5 and 2924.

6       The moving defendants further note the absence of prejudice to Ms. Dooms' from alleged

7   statutory violations and cite to *Knapp v. Doherty*, 123 Cal.App.4th 76, 94, 20 Cal.Rptr.3d 1 (2004): ".

8   . . slight procedural irregularity in the service of the Sale Notice did not cause any injury to Borrowers.

9   They had notice of the original sale date; the trustee's sale did not go forward until almost one year after

10  the date noticed. There was no prejudicial procedural irregularity."  The moving defendants note that

11  based on the complaint, Ms. Dooms acknowledges her default, opportunities to seek loan modification,

12  and foreclosure sale postponements during December 3, 2009 to April 26, 2010.

13      The complaint lacks sufficient allegations to overcome presumption of foreclosure validity or

14  to demonstrate prejudice to Ms. Dooms from alleged irregularities.  No allegations suggest that the

15  foreclosure sale was illegal, fraudulent or wilfully oppressive.  The gist of the complaint is that Ms.

16  Dooms sought loan modification during the foreclosure process.  There are no allegations that the

17  moving defendants offered Ms. Dooms a legally enforceable forbearance to foreclose.  The complaint

18  points to no meaningful injury to Ms. Dooms, especially given that the complaint acknowledges her

19  continuing default despite her well-documented legal obligations to make monthly payments.

20                              ***Failure To Tender***

21      The moving defendants further challenge the complaint's attempts to set aside the foreclosure

22  sale given the complaint's failure to allege Ms. Dooms' tender or ability to tender amounts owed under

23  her loan.

24      "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

25  *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

26  Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

27  (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

28  *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.  "Nothing short of the full amount due the

                                        21

creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.*, 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.*, 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

The absence of allegations of Ms. Dooms' tender or ability to tender dooms her claims to challenge the foreclosure sale. Her purported offer to cure her default is insufficient.

### Unfair Business Practices

The complaint's ninth claim attempts to invoke California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et al. The UCL claim alleges that "Defendants' business acts and

practices, as alleged herein, in violation of the non-judicial foreclosure law . . . constitute 'unlawful violations under the UCL."

The moving defendants challenge the complaint's lack of a predicate claim to support UCL liability.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

24

1   *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

2   "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law,

3   or violates the policy or spirit of one of those laws because its effects are comparable to or the same as

4   a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech*

5   *Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548.

6   The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members

7   of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*

8   178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be

9   deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673,

10   at *5 (N.D. Cal. 2005).

11   "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

12   reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

13   *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

14   The complaint is insufficient to establish that the moving defendants engaged in unlawful, unfair

15   or fraudulent business practices under the UCL.  In the absence of violation of a borrowed law, a UCL

16   claim fails in that it cannot rest on alleged irregularities in the loan transaction or foreclosure

17   proceedings.  The complaint lacks viable claims under the California common law and statutes.  The

18   complaint points to no predicate violation of law.  The complaint lacks reasonable particularity of facts

19   to support a UCL claim.  Reliance on other invalid claims alleged in the complaint fails to support a

20   viable UCL claim.   The UCL claim lacks particularity of fraudulent circumstances, such as a

21   misrepresentation, for a UCL claim, especially given failure of fraud and related claims, as discussed

22   above.  The complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claim's

23   dismissal.

24   **Cancellation Of Trustee's Deed And Setting Aside Trustee's Sale**

25   The complaint's tenth and eleventh claims challenge Cal-Western Reconveyance's ability to act

26   as trustee in that its trustee substitution was recorded on June 9, 2009, after MERS transferred its

27   beneficial interest under the first DOT to Ocwen on April 1, 2009.  The claims allege that Cal-Western

28   lacked power of sale to foreclose under the first DOT to warrant cancellation of the trustee's deed and

1    setting aside the trustee's sale.

2         As to trustee's deed cancellation and setting aside the trustee's sale, the moving defendants raise

3    similar attacks as to those against the complaint's wrongful foreclosure claim.

4         To challenge foreclosure, "it is necessary for the complaint to state a case within the code

5    sections for which reason it is essential to allege the facts affecting the validity and invalidity of the

6    instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).  A

7    defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in

8    order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*, 43 Cal.App.4th

9    at 1109, 51 Cal.Rptr.2d 286.  "A valid and viable tender of payment of the indebtedness owing is

10   essential to an action to cancel a voidable sale under a deed of trust." *Karlsen*, 15 Cal.App.3d at117, 92

11   Cal.Rptr. 851.  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor

12   can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr.

13   15.

14        Moreover, a request to cancel the trustee's deed is "dependent upon a substantive basis for

15   liability, [and it has] no separate viability." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018,

16   1023, 98 Cal.Rptr.2d 661 (2000).  To attack a non-judicial foreclosure sale, a plaintiff must plead and

17   prove "an improper procedure and the resulting prejudice." *Knapp v. Doherty*, 123 Cal.App.4th 76, 86,

18   n. 4, 20 Cal.Rptr.3d 1 (2004).  In addition, a plaintiff must plead with particularity a claim based on

19   violation of the non-judicial foreclosure statutes.  *Gomez v. Wachovia Mortg. Corp.*, 2010 WL 291817,

20   at p. 6 (N.D. Cal. 2010).

21        Reasserting their points made as to wrongful foreclosure, the moving defendants argue there is

22   "no basis" to set aside foreclosure or to cancel the trustee's deed.  The moving defendants are correct.

23   The complaint lacks sufficient allegations to overcome presumption of foreclosure validity or to

24   demonstrate prejudice to Ms. Dooms from alleged irregularities.  No allegations suggest that the

25   foreclosure sale was illegal, fraudulent or wilfully oppressive.  The complaint fails to support

26   cancellation of the trustee's deed or setting aside the trustee's sale.

27        Moreover, the moving defendants properly attack the complaint's claim that Cal-Western

28   Reconveyance was not entitled to record the default notice because it substituted as trustee after the

26

1  default notice was recorded.  Cal-Western Reconveyance did not act as trustee to record the default

2  notice but rather as an agent of the trustee or beneficiary, as authorized under California Civil Code

3  sections 2924(a)(1) and 2924b(b)(4).  The moving defendants further properly challenge the complaint's

4  claim that MERS was not authorized to record the trustee substitution on June 9, 2010 in that MERS had

5  assigned beneficial interest under the first DOT to Ocwen.  MERS executed the trustee substitution on

6  April 1, 2009 to render the substitution effective regardless of recording.

### Quiet Title

8       The complaint's (twelfth) quiet title claim again challenges Cal-Western Reconveyance's power

9  to foreclose based on its substitution as first DOT trustee.

10      The moving defendants challenge the quiet title claim's failure to allege necessary elements and

11  Ms. Dooms' tender of amounts owed under her loan.

12      California Code of Civil Procedure section 760.010 provides for an action "to establish title

13  against adverse claims to real or personal property or any interest therein."  California Code of Civil

14  Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

15       1.    A legal description and street address of the subject real property;

16       2.    The title of plaintiff as to which determination is sought and the basis of the title;

17       3.    The adverse claims to the title of the plaintiff against which a determination is sought;

18       4.    The date as of which the determination is sought; and

19       5.    A prayer for the determination of the title of the plaintiff against the adverse claims.

20  The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or

21  proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., §

22  760.030.

23      The moving defendants note that the complaint lacks the property's legal description.  Moreover,

24  the complaint lacks facts as to the title of which Ms. Dooms seeks determination and the basis of Ms.

25  Dooms' purported title given her default and inability to tender amounts due on her loans.  A quiet title

26  claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have

27  satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration*

28  *Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that Ms. Dooms

1   is a rightful owner of the property with satisfaction of first DOT obligations and thus lacks a properly

2   pled quiet title claim.

3       As explained above, a purported quiet title claim is doomed in the absence of a tender of amounts

4   owed.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

5   paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934).  "A party may

6   not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust,

7   or have his title quieted against the purchaser at such a sale, even though the statute of limitations has

8   run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see*

9   *Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not

10  maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39

11  Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his

12  debt.  The cloud upon his title persists until the debt is paid.").

13      "A valid and viable tender of payment of the indebtedness owing is essential to an action to

14  cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,  92 Cal.Rptr. 851.  An

15  "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action

16  which a court of equity would recognize."  *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7

17  (1901).

18      Ms. Dooms is unable to re-acquire good title to the foreclosed property without paying or

19  tendering the outstanding indebtedness.  With the complaint's absence of a meaningful ability or

20  willingness to tender the indebtedness, a purported quiet title claim fails.  To find otherwise would award

21  Ms. Dooms a windfall.

## Injunctive Relief

23      The complaint's thirteenth claim alleges that injunctive relief "is authorized and appropriate to

24  remedy the violations of law and equity and resulting harm, or threats of harm" to Ms. Dooms.

25      The moving defendants argue that the injunctive relief claim fails as an "equitable remedy," "not

26  an independent claim," and that the complaint fails to "show any likelihood of success on the merits."

27      "Equity will not interpose its remedial power in the accomplishment of what seemingly would

28  be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there

1  has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*,

2  *v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is

3  a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief

4  may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

5      The complaint lacks facts to support injunctive relief, especially given the absence in the record

6  of foreclosure or other irregularities.  No viable claim supports injunctive relief to doom an injunctive

7  relief claim for Ms. Dooms.  In other words, injunctive relief fails with the complaint's claims.

8                                    **Declaratory Relief**

9      The complaint's fourteenth claim seeks declarations that "Defendants" are precluded to evict Ms.

10  Dooms because "the foreclosure sale was void" and that Ms. Dooms "is entitled to loan modification."

11      The moving defendants contend that the declaratory relief claim fails in that the complaint does

12  not entitle Ms. Dooms to relief on her other claims.

13      The complaint lacks a viable declaratory relief claim.  The Declaratory Judgment Act ("DJA"),

14  28 U.S.C. §§ 2201, 2202, provides in pertinent part:

15          In a case of actual controversy within its jurisdiction . . . any court of the United
          States, upon the filing of an appropriate pleading, may declare the rights and other legal
16          relations of any interested party seeking such declaration, whether or not further relief
          is or could be sought.  Any such declaration shall have the force and effect of a final
17          judgment or decree and shall be reviewable as such.

18  28 U.S.C. §2201(a).

19      The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

20  300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

21  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

22  "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

23  (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

24  a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142,

25  143 (9th Cir. 1994).

26      Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying

27  and settling the legal relations in issue, and (2) when it will terminate and afford relief from the

28  uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738

1    F.2d 1462, 1470 (9th Cir.1984).

2         As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

3    controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

4    the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

5    273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

6         A justiciable controversy is thus distinguished from a difference or dispute of a
          hypothetical or abstract character; from one that is academic or moot. . . . The
7         controversy must be definite and concrete, touching the legal relations of parties having
          adverse legal interests. . . . It must be a real and substantial controversy admitting of
8         specific relief through a decree of a conclusive character, as distinguished from an
          opinion advising what the law would be upon a hypothetical state of facts.

9

10   *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

11        The failure of the complaint as a whole demonstrates the absence of an actual controversy subject

12   to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which

13   otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655

14   F.2d 938, 943 (9th Cir. 1981).  In the absence of a viable claim, the complaint fails to support declaratory

15   relief.

16                           **Attempt At Amendment And Malice**

17        Since the complaint's claims are barred as a matter of law, Ms. Dooms is unable to cure her

18   claims by allegation of other facts and thus is not granted an attempt to amend.

19        Moreover, this Court surmises that Ms. Dooms has brought this action in absence of good faith

20   and that Ms. Dooms seeks to exploit the court system solely for delay or to vex defendants.  The test for

21   maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

22   applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

23   F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

24   inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

25   good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

26   or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

27   Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

28   / / /

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.    DISMISSES with prejudice this action against the moving defendants;[8]

2.    DIRECTS the clerk to enter judgment against plaintiff Susana Islas Dooms and in favor of defendants Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., and Federal Home Loan Mortgage Corporation in that there is no just reason to delay to enter such judgment given that Ms. Dooms' claims against the moving defendants and their alleged liability are clear and distinct from claims against and liability of any other defendant.  *See* F.R.Civ.P. 54(b); and

3.    ORDERS Ms. Dooms' counsel, no later than April 6, 2011, to file papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation.

**This Court ADMONISHES Ms. Dooms' counsel that this Court will dismiss this action against defendant Cal-Western Reconveyance Corporation if Ms. Dooms' counsel fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation.   This Court further ADMONISHES Ms. Dooms' counsel of potential liability under 28 U.S.C. § 1927 and other authorities.**

IT IS SO ORDERED.

**Dated:    March 30, 2011                          /s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE

---

[8]    Sua sponte dismissal of Ms. Dooms' claims renders moot her request to continue the April 25, 2011 hearing.