1

2

3

4

5

6

7

8

9

10 **IN THE UNITED STATES DISTRICT COURT**

11 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13 SUSANA ISLAS DOOMS,                         CASE NO. CV F 11-0352 LJO DLB

14              Plaintiff,                    **ORDER ON BANK OF AMERICA'S F.R.Civ.P.**
                                             **12(b)(6) MOTION TO DISMISS**
15      vs.                                   (Doc. 4.)

16 FEDERAL HOME LOAN MORTGAGE
   CORPORATION, et al.,
17
             Defendants.
18 _____/

19                          **INTRODUCTION**

20         Defendant Bank of America, N.A. ("B of A")[1] seek to dismiss as legally barred and inadequately

21 pled plaintiff Susana Islas Dooms' ("Ms. Dooms") claims arising from her home loan default, failed loan

22 modification, and trustee's sale of her Fresno residence ("property").  This Court considered B of A's

23 F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 25, 2011 hearing, pursuant

24 to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action against B of

25 A.

26

27 _____

[1]       This order addresses the F.R.Civ.P. 12(b)(6) motion to dismiss brought by B of A, which is successor in
   interest to named defendant Countrywide Bank, FSB ("Countrywide").  Defendants Ocwen Loan Servicing, LLC ("Ocwen"),
   Mortgage Electronic Registration Systems, Inc. ("MERS"), and Federal Home Loan Mortgage Corporation ("Freddie Mac")
28 also filed a F.R.Civ.P. 12(b)(6) motion to dismiss which this Court addresses in a separate order.

1

1

## BACKGROUND[2]

2

### Summary

3    The complaint alleges that Ms. Dooms was induced not to make home loan payments to qualify

4 her for loan modification and was assured that the property would not be subject to foreclosure.  Ms.

5 Dooms did not obtain a loan modification and through foreclosure proceedings, the property was sold

6 at a trustee's sale.  The complaint alleges against B of A/Countrywide, Ocwen, MERS, Freddie Mac and

7 defendant Cal-Western Reconveyance Corporation ("Cal-Western Reconveyance")[3] California common

8 law and statutory claims which will be discussed below.  The complaint seeks to set aside the trustee's

9 sale and to reconvey the property to Ms. Dooms.

10

### Ms. Dooms' Loans

11    Ms. Dooms obtained from Plaza Homemortgage, Inc. a December 21, 2006 loan for $310,000

12 and secured by a Deed of Trust ("first DOT") on the property.  The first DOT identifies Chicago Title

13 as trustee and MERS as beneficiary and was recorded on December 28, 2006.[4]

14    In August 2007, Ms. Dooms received a $55,000 line of credit from Countrywide, now B of A,

15 and secured by a Deed of Trust and Assignment of Rents ("second DOT") on the property.  The second

16 DOT was recorded on August 15, 2007.

17

### Loan Modification Attempts

18    In 2007, Ms. Dooms "experienced financial difficulties."  In early 2008, Ms. Dooms requested

19 a loan modification from Countrywide for a reduced monthly mortgage payment.  In June 2008,

20 Countrywide advised Ms. Dooms that to qualify for "any available loan modification program," Ms.

21 Dooms must be "in default for three months."  Ms. Dooms stopped making her mortgage payments for

22 July, August and September 2008.

23    In September 2008, Ms. Dooms telephoned Countrywide and was informed that Countrywide

24

25    [2]    The factual recitation is derived generally from Ms. Dooms' operative Verified Complaint ("complaint"), documents attached to the complaint, and matters of which this Court may take judicial notice.

26    [3]    The complaint makes numerous references to "Defendants."  This Court presumes that such reference is

27 to B of A/Countrywide, Ocwen, MERS, Freddie Mac, and Cal-Western Reconveyance collectively.

28    [4]    All documents pertaining to Ms. Dooms' loan and foreclosure proceedings were recorded with the Fresno County Recorder.

1  "had no record of her loan because her loan was sold to Ocwen."[5]  Ocwen confirmed taking over Ms.

2  Dooms' loan but lacked a record of her loan modification request.  Ocwen informed Ms. Dooms to

3  request loan modification through Ocwen's website, and Ms. Dooms submitted three online requests for

4  loan modification.  Ms. Dooms later mailed a loan modification package to Ocwen.  During 2009, Ms.

5  Dooms inquired of Ocwen about her loan modification and faxed "the same documents at least five

6  times before Ocwen would confirm receipt."

7  **Foreclosure Proceedings**

8  By an Assignment of Deed of Trust ("Ocwen DOT assignment") dated April 1, 2009, MERS

9  assigned to Ocwen all beneficial interest under the first DOT.  The Ocwen DOT assignment was

10  notarized on April 19, 2010 and recorded on April 22, 2010.

11  In July 2008, Ms. Dooms defaulted on her first DOT loan.  On April 23, 2009, Cal-Western

12  Reconveyance for Ocwen recorded a Notice of Default which noted that Ms. Dooms was $17,451.66

13  in arrears as of April 22, 2009 on her first DOT loan.

14  On June 9, 2009, Cal-Western Reconveyance recorded a Substitution of Trustee ("trustee

15  substitution") by which MERS substituted Cal-Western Reconveyance as trustee under the first DOT.

16  MERS executed the trustee substitution on April 1, 2009.

17  On November 17, 2009, Cal-Western Reconveyance recorded a Notice of Trustee's Sale

18  ('trustee's sale notice") to set a December 3, 2009 sale.  Cal-Western Reconveyance executed the

19  trustee's sale notice on November 3, 2009.  The trustee's sale notice was not posted on the property.

20  By an Assignment of Deed of Trust California ("Freddie Mac DOT assignment") executed and

21  notarized on January 4, 2010, Ocwen assigned to Freddie Mac its interest in the first DOT.  The Freddie

22  Mac DOT assignment was recorded on May 7, 2010 and states that it "is made and entered into as of the

23  16th day of January 2009."  An allonge is attached to the Freddie Mac DOT assignment to transfer Ms.

24  Dooms' $310,000 promissory note to Freddie Mac.  The allonge states that its effective date is January

25  16, 2009.

26  Ms. Dooms telephoned Ocwen regarding the trustee's sale notice and "was assured by an Ocwen

27

28  _____

[5]  B of A notes that its or Countrywide's involvement with Ms. Dooms' loan ceased with the loan's sale to Ocwen.

3

representative that her Property would not be sold because she was in a loan modification process." Each time the trustee's sale was postponed, Ms. Dooms "was assured by Ocwen that her Property would not be sold, and it was not." After three postponements, the property was set for an April 26, 2010 sale.

On April 17, 2010, "Scott" at Ocwen informed Ms. Dooms that she "qualified for a loan modification with his department" and that "he would make sure that the Property was taken off of calendar for the sale scheduled on April 26, 2010."

Ocwen's April 17, 2010 letter informed Ms. Dooms that she had until May 17, 2010 to submit documents to support her loan modification.

On April 26, 2010, Ocwen sold the property to Freddie Mac. A Trustee's Deed Upon Sale was recorded on May 7, 2010.

Ms. Dooms "would never have defaulted on her mortgage had she known her home would be foreclosed" in that her father "was ready, willing, and able to cure her default." Ms. Dooms "defaulted on her mortgage payments for the sole purpose of qualifying for a loan modification program, as advised by Countrywide and Ocwen."

### Ms. Dooms' Claims

The complaint, filed on January 31, 2011, alleges against B of A/Countrywide fourteen California common law and statutory claims which will be addressed below. The complaint seeks to enjoin defendants from evicting Ms. Dooms and from transferring the property. The complaint seeks to cancel the Trustee's Deed Upon Sale, set aside the foreclosure and reconvey the property's title to Ms. Dooms. The complaint seeks recovery for Ms. Dooms' "mental anguish" and punitive damages.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

B of A challenges the complaint's claims as legally barred and lacking necessary elements to support claims. B of A notes that the complaint concedes that Countrywide ceased involvement in Ms. Dooms' loan prior to her loan modification attempts and foreclosure proceedings and in turn prior to alleged wrongdoing.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

4

*Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

5

1   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

2   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

3   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

4   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either

5   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

6   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

7   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

8        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

9   explained:

10        . . . a complaint must contain sufficient factual matter, accepted as true, to "state
     a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
11   plaintiff pleads factual content that allows the court to draw the reasonable inference that
     the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
12   akin to a "probability requirement," but it asks for more than a sheer possibility that a
     defendant has acted unlawfully. (Citations omitted.)

13

14        After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

15   to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

16   must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

17   F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

18        The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

19        First, the tenet that a court must accept as true all of the allegations contained in
     a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
20   a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
     only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
21   . Determining whether a complaint states a plausible claim for relief will . . . be a
     context-specific task that requires the reviewing court to draw on its judicial experience
22   and common sense. . . . But where the well-pleaded facts do not permit the court to infer
     more than the mere possibility of misconduct, the complaint has alleged – but it has not
23   "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

24        In keeping with these principles a court considering a motion to dismiss can
     choose to begin by identifying pleadings that, because they are no more than conclusions,
25   are not entitled to the assumption of truth. While legal conclusions can provide the
     framework of a complaint, they must be supported by factual allegations. When there are
26   well-pleaded factual allegations, a court should assume their veracity and then determine
     whether they plausibly give rise to an entitlement to relief.

27

28   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9ᵗʰ Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11ᵗʰ Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).   A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.   If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6ᵗʰ Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9ᵗʰ Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9ᵗʰ Cir. 2006).   A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9ᵗʰ Cir. 1998).[6]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9ᵗʰ Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9ᵗʰ Cir.

---

[6]     "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9ᵗʰ Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss.  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.  In addition, the complaint's claims are susceptible to defenses.

### Global Attack – Failure To Satisfy F.R.Civ.P. 8

B of A globally attacks the complaint's failure to attribute actionable wrongdoing to it or Countrywide.  B of A is correct.  The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case."  *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."  *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges."  *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief.  The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests."  *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997).  Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim.  *Jones*, 733 F.2d at 649.  A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting  *Twombly*, 550 U.S. at 557, 127 S.Ct.

8

1955).  The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

B of A faults the complaint's failure to allege wrongdoing against it or Countywide in that neither was involved in Ms. Dooms' loan application or foreclosure proceedings.  B of A points to the complaint's allegation that as of September 2008, Countrywide informed Ms. Dooms that it had sold her loan to Ocwen.  B of A points to further allegations that Ms. Dooms sought loan modification in November 2008 and that foreclosure proceedings commenced on April 23, 2009, well after Countrywide's sale of Ms. Dooms' loan.  B of A notes the limited allegation that Countrywide advised Ms. Dooms of the need to be "in default for three months" to qualify for loan modification.  B of A further notes the absence of allegations that Countrywide instructed Ms. Dooms to default or promised her loan modification if she defaulted.  B of A challenges the absence of allegations attributed to its or Countrywide's misconduct in the foreclosure process.  B of A faults the complaint's lumping it with "Defendants" without singling out specific wrongs of Countrywide or B of A.

B of A makes valid points.  The complaint fails to satisfy F.R.Civ.P. 8 as to B of A/Countrywide.  The complaint fails to distinguish alleged wrongdoing of B of A/Countrywide and the complaint's other defendants.   The complaint points only to Countrywide's alleged statement to qualify for loan modification, Ms. Dooms must be in default for three months.   The complaint focuses on loan modification attempts and foreclosure well after B of A/Countrywide's involvement in Ms. Dooms' loan. The complaint lacks facts of B of A/Countrywide's purported wrongdoing to provide fair notice as to what B of A is to defend.

## **Breach Of Contract**

The complaint's (first) breach of contract claim alleges that "Defendants were required to enroll [Ms. Dooms] in a loan modification program so long as [Ms. Dooms] defaulted on her mortgage for three months and provided all the documentation." The claim further alleges that "Defendants" breached

agreements by failing to:

      1.     Process Ms. Dooms' loan modification applications;

      2.     Allow Ms. Dooms to cure her default;

      3.     Allow Ms. Dooms up to May 17, 2010 to submit documents to support loan modification; and

      4.     Cancel the foreclosure sale to result in the sale to Freddie Mac.

B of A attacks the breach of contract claim as time barred and failing to alleged "a valid underlying contract."

### Limitations Defense

B of A argues that breach of an alleged oral contract with it or Countrywide is subject to the two-year limitations period of California Code of Civil Procedure section 339(1). B of A notes the limited allegations that in June 2008, Countrywide advised Ms. Dooms that to qualify for loan modification, she must be in default for three months and that in September 2008, Ms. Dooms knew that Countrywide would not modify her loan since it was sold to Ocwen.

Based on the complaint, Ms. Dooms knew no later than September 2008 that Countrywide had breached an alleged oral agreement to modify her loan to render untimely her complaint filed January 31, 2011. The two-year limitations period bars a purported breach of oral contract claim.

### Elements

B of A further attacks the absence of a valid contract with Ms. Dooms.

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008). "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'" *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

"As to the contract, where a written instrument is the foundation of a cause of action, it may be pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference." *Byrne v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d

218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient." *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

B of A faults the complaint's failure to identify "a valid existing contract" in that the complaint does not set forth verbatim contract terms and no copy of the written instrument on which Ms. Dooms relies is attached.  B of A points to the absence of a writing to require loan modification.

B of A further faults the absence of allegations to support an oral contract in that Countrywide's alleged statement regarding qualification for loan modification does not constitute a promise to modify Ms. Dooms' loan.  B of A points out that an agreement for loan modification must be in writing to satisfy the statute of frauds.

"A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)).  An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d 275.  "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275.

The complaint alleges no specific contract terms enforceable as to B of A/Countrywide.  At best, the complaint references preliminary discussions regarding loan modification and not a breach of identified contract terms.  Moreover, B of A is correct that a loan modification offer is subject to the statute of frauds since it would seek to modify a deed of trust, which is subject to the statute of frauds. The complaint fails to identify a written modification and fails to allege that B of A/Countrywide signed an agreement.  The statue of frauds bars the breach of contract claim.  Additionally, the complaint lacks facts of B of A/Countrywide's alleged breach of a contract in that the complaint addresses alleged conduct of other defendants.  As such, the breach of contract claim is subject to dismissal as to B of A.

**Detrimental Reliance**

The complaint's (second) detrimental reliance claim alleges that in breach of "Defendants' promises regarding [Ms. Dooms'] loan modification, [Ms. Dooms'] Property was sold in a trustee's sale." The claim continues that had Ms. Dooms "known that Defendants would proceed with the foreclosure sale, she would have borrowed the money necessary to cure the default from her dad and would have prevented the foreclosure sale of her home." The claim further alleges that Ms. Dooms did not cure the default due to her "reasonable reliance on Defendants' promises regarding her loan modification."

B of A contends that this "fabricated claim appears to lump together her breach of contract, promissory estoppel, and fraud claims" and "fails for all of the same reasons."

B of A is correct. The detrimental reliance claim fails with the breach of contract claim, and as will be seen below, fails with the complaint's promissory estoppel and fraud claims.

**Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

The complaint's third claim alleges that "Defendants" breached the "implied promise of good faith and fair dealing" by:

1.  Advising Ms. Dooms that she must be in default for three months to qualify for loan modification;

2.  Failing to process Ms. Dooms for loan modification;

3.  Failing to consider Ms. Dooms' documents and information for loan modification;

4.  Failing to allow Ms. Dooms up to May 17, 2010 to submit documents to support loan modification;

5.  Selling the property prior to May 17, 2010; and

6.  Failing to provide Ms. Dooms an opportunity to cure her default prior to the property's sale.

B of A faults an implied covenant claim in the absence of an enforceable contract with B of A/Countrywide.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."

12

1   *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

2   (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The

3   implied covenant of good faith and fair dealing rests upon the existence of some specific contractual

4   obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031,

5   14 Cal.Rptr.2d 335 (1992). "There is no obligation to deal fairly or in good faith absent an existing

6   contract." *Racine & Laramie*, 11 Cal.App.4th at 1032, 14 Cal.Rptr.2d 335. The "implied covenant is

7   a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior

8   to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 799, 71 Cal.Rptr.3d 885

9   (2008).

10        A breach of implied covenant of good faith and fair dealing claim "must show that the conduct

11   of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted

12   . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and

13   disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of

14   the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395,

15   272 Cal.Rptr. 387 (1990).

16        The "implied covenant of good faith and fair dealing is limited to assuring compliance with the

17   express terms of the contract, and cannot be extended to create obligations not contemplated by the

18   contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d

19   233 (2004) (citation omitted). The "scope of conduct prohibited by the covenant of good faith is

20   circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v.

21   Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992). "[T]he implied

22   covenant will only be recognized to further the contract's purpose; it will not be read into a contract to

23   prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt

24   Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant

25   'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the

26   specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565

27   (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

28        The complaint lacks a specific contractual obligation on which to premise an implied covenant

13

claim against B of A/Countrywide.  In the absence of a tangible breach of contract claim, the complaint lacks facts to demonstrate B of A's failure or refusal to discharge contractual responsibilities, prompted by a conscious and deliberate acts.  The breach of implied covenant of good faith and fair dealing claim improperly seeks to impose on B of A obligations beyond the scope of a purported contract.  Moreover, the first DOT permitted foreclosure and thus no implied covenant prohibited doing that which the first DOT permitted.

**Promissory Estoppel**

The complaint's (fourth) promissory estoppel claim alleges that "Defendants" made statements/promises regarding the loan modification process, including:

1.      Advising Ms. Dooms to default on her mortgage for three months;

2.      Promising to process Ms. Dooms' loan modification applications;

3.      Promising to forebear foreclosure pending Ms. Dooms' loan modification application;

4.      Promising not to sell the property on April 26, 2010; and

5.      Promising to give Ms. Dooms until May 17, 2010 to provide further documentation to support loan modification.

The claim continues that "Defendants . . . refuse to honor their promises" to Ms. Dooms.

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Federal Savings & Loan Assn.,* 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976).  "Promissory estoppel is a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority,* 23 Cal.4th 305, 310, 96 Cal.Rptr.2d 747 (2000) (citation and internal quotations omitted).

B of A faults the complaint's failure to identify a "clear and unambiguous" promise, and in particular, a guarantee or promise of loan modification.  B of A points out the absence of loan modification details, such as interest rate.  B of A questions Ms. Dooms' reasonable reliance, especially in the absence of allegations of a clear and unambiguous promise.

B of A is correct that the complaint lacks facts of a clear and unambiguous promise and reasonable reliance to support a promissory estoppel claim against B of A.  The complaint ties the alleged three-month default comment to no particular Countrywide representative.  The complaint merely alludes to a three-month default requirement to qualify for loan modification. The complaint points to no consideration on Ms. Dooms' part to support promissory estoppel and indeed reflects that she purposely stopped making legally required mortgage payments to render her unsympathetic in a court of equity.

## **Negligence**

The complaint's (fifth) negligence claim alleges that "Defendants" breached duties of care to:

1.      Process Ms. Dooms' loan modification applications;

2.      Halt foreclosure activities pending Ms. Dooms' loan modification;

3.      Allow Ms. Dooms' to cure default;

4.      Refrain from selling the property on April 26, 2010; and

5.      Allow Ms. Dooms up to May 17, 2010 to provide further documentation for loan modification.

### *Limitations Defense*

B of A argues that since the complaint references no contact with B of A/Countrywide after September 2008, the negligence claim against B of A is subject to the two-year limitations period of California Code of Civil Procedure section 339(1).

The complaint is clear that Ms. Dooms was aware that B of A/Countrywide's involvement with her loan ceased as of September 2008 to render her compliant, filed January 31, 2011, untimely as to a negligence claim against B of A.

### *Duty Of Care*

B of A argues that the complaint alleges no facts to support existence of B of A's duty of care to Ms. Dooms in that the complaint focuses on duties "to process her loan application and not to proceed with the foreclosure sale" which do not apply to Countrywide's limited involvement in Ms. Dooms' loan.  B of A further argues that a lender/borrower relationship fails to impose an actionable duty of care on B of A/Countrywide.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of

a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had"). "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

B of A is correct that the complaint's "conclusory allegations that Defendant owed her a duty are insufficient to create a duty." Ms. Dooms lacks a negligence claim based on a lender/borrower relationship, particularly in the absence of a duty to forego foreclosure or to provide a loan modification. The complaint lacks facts to support an actionable duty to impose on B of A. "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991). B of A/Countrywide owed no duty of care to Ms. Dooms arising from her default, property foreclosure, and loan modification attempts. The complaint lacks facts of special circumstances to impose duties on B of A/Countrywide in that the complaint depicts an arms-length transaction, nothing more. The complaint fails to substantiate a special lending relationship or an actionable breach of duty to substantiate a negligence claim. The negligence claim fails.

## Misrepresentation And Fraud

The complaint's (sixth) fraudulent misrepresentation claim alleges that "Defendants" falsely:

1.  Advised Ms. Dooms that she must default her mortgage for three months to qualify for loan modification;

2.  Promised to process Ms. Dooms' loan modification application;

3.  Promised to forego foreclosure pending Ms. Dooms' loan modification;

4.  Promised not to sell the property on April 26, 2010; and

5.  Promised to give Ms. Dooms up to May 17, 2010 to provide further documentation to

1    support loan modification.

2        The complaint's (seventh) claim alleges that "Defendants" intended to defraud Ms. Dooms of

3    the property by "back-dating public documents related to the Property" and preventing Ms. Dooms "to

4    cure the default before selling the Property on April 26, 2010."

5        B of A attacks the fraud claims as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b).

6        The elements of a California fraud claim are: (1) misrepresentation (false representation,

7    concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

8    to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

9    631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

10   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

11   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

12       "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

13   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

14   156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

15   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

16   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." 

17   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

18   will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

19   Cal.Rptr. 355 (1986).

20                                 ***Particularity Pleading Standard***

21       F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[7]

22   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

23   particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

24   Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

25

26       [7]    F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
27   Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*
*v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
28   1995)(italics in original)).

9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[8]  A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).  The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

---

[8]    "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations as to what defendant, through specifically identified and authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct. B of A is correct to challenge Ms. Dooms' valid reliance given that the complaint indicates that she intentionally discontinued her loan payments. The complaint relies on mere notions of false advise and promises regarding foreclosure and loan modification and defrauding Ms. Dooms of her property. Given the number of defendants and their differing roles, such allegations are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

### **Wrongful Foreclosure**

The complaint's eighth claim challenges "Defendants'" compliance with California's foreclosure statutes in that:

1.      Since "MERS already assigned and transferred title to Ocwen on April 1, 2009, MERS could not then substitute Cal-Western as the new trustee on June 9, 2009";

20

1    2.    Defendants did not comply with California Civil Code section 2923.5 ("section 2923.5")

2          because "Defendants never contacted [Ms. Dooms] 'to explore options' for her to avoid

3          foreclosure" and Ms. Dooms "was never given an opportunity to cure the default"; and

4    3.    The trustee's sale notice was not posted on the property to comply with California Civil

5          Code section 2924.8(a) ("section 2924.8(a)").

6    The claim concludes that the default notice and trustee's sale notice are "invalid and void."

7          B of A challenges the claim against it in that it was not involved in foreclosure and there are no

8    allegations of Ms. Dooms' ability to tender outstanding amounts owed under her loan.

9                                    ***Presumption Of Validity***

10         Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

11   trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

12   in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

13   thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

14   the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

15   deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

16   *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

17         If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

18   may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

19   286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

20   applicable California Civil Code sections:

21              The comprehensive statutory framework established to govern nonjudicial
                foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
22              to notice and right to cure. It would be inconsistent with the comprehensive and
                exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
23              unrelated cure provision into statutory nonjudicial foreclosure proceedings.

24   *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

25   *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

26   the power of sale contained in a deed of trust.")

27         Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

28   their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

2924b(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted). "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

22

1   *Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

2       With presumption of validity in mind, this Court turns to B of A's challenges to the complaint's

3   claims of statutory violations.

4                                    ***Statutory Requirements***

5       Section 2923.5(a)(1) prohibits a mortgagee, trustee, beneficiary or authorized agent to "file a

6   notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by

7   paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)."

8   Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower

9   in person or by telephone in order to assess the borrower's financial situation and explore options for

10  the borrower to avoid foreclosure."   Section 2923.5(b) requires a default notice to include a declaration

11  "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including

12  attempt "with due diligence to contact the borrower as required by this section."

13      B of A points out the complaint's references to "Defendants'" non-compliance in that Ms.

14  Dooms "was the one to first inquire about the loan modification process."  B of A further points to the

15  default notice's declaration of section 2923.5 compliance in that its language tracks the statute.  *See*

16  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 214, 110 Cal.Rptr.3d 201 (2010).

17      B of A is correct that the complaint lacks facts to support non-adherence to section 2923.5 in that

18  the publicly recorded documents "clearly show that the defendants were entitled to foreclose under the

19  laws exclusively governing non-judicial foreclosure."  B of A properly attacks that complaint's claim

20  that Cal-Western Reconveyance was not entitled to record the default notice because it substituted as

21  trustee after the default notice was recorded.  B of A correctly notes that Cal-Western Reconveyance did

22  not act as trustee to record default notice but rather as an agent of the trustee or beneficiary, as authorized

23  under California Civil Code sections 2924(a)(1) and 2924b(b)(4).  B of A further properly challenges

24  the complaint's claim that MERS was not authorized to record the trustee substitution on June 9, 2010

25  in that MERS had assigned beneficial interest under the first DOT to Ocwen.  MERS executed the

26  trustee substitution on April 1, 2009 to render the substitution effective regardless of recording.

27      B of A further points to the absence of prejudice to Ms. Dooms from alleged statutory violations

28  and cites to *Knapp v. Doherty*, 123 Cal.App.4th 76, 94, 20 Cal.Rptr.3d 1 (2004): ". . . slight procedural

                                              23

irregularity in the service of the Sale Notice did not cause any injury to Borrowers. They had notice of the original sale date; the trustee's sale did not go forward until almost one year after the date noticed. There was no prejudicial procedural irregularity." Based on the complaint, Ms. Dooms acknowledges her default, opportunities to seek loan modification, and foreclosure sale postponements during December 3, 2009 to April 26, 2010.

The complaint lacks sufficient allegations to overcome presumption of foreclosure validity or to demonstrate prejudice to Ms. Dooms from alleged irregularities. No allegations suggest that the foreclosure sale was illegal, fraudulent or wilfully oppressive. The gist of the complaint is that Ms. Dooms sought loan modification during the foreclosure process. There are no allegations that any defendant offered Ms. Dooms a legally enforceable forbearance to foreclose. The complaint points to no meaningful injury to Ms. Dooms, especially given that the complaint acknowledges her continuing default despite her well-documented legal obligations to make monthly payments.

### Failure To Tender

B of A further challenges the complaint's attempts to set aside the foreclosure sale given the complaint's failure to allege Ms. Dooms' tender or ability to tender amounts owed under her loan.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88

1    Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

2         In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157

3    (1989), the California Court of Appeal explained:

4         . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
          procedure should be accompanied by an offer to pay the full amount of the debt for
5         which the property was security." . . . . This rule . . . is based upon the equitable maxim
          that a court of equity will not order a useless act performed. . . . "A valid and viable
6         tender of payment of the indebtedness owing is essential to an action to cancel a voidable
          sale under a deed of trust." . . .  The rationale behind the rule is that if plaintiffs could not
7         have redeemed the property had the sale procedures been proper, any irregularities in the
          sale did not result in damages to the plaintiffs.  (Citations omitted.)

8

9         An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

10   a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15

11   Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no

12   effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851

13   (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the

14   offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92

15   Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical

16   ground that notice was improper, if the party making the challenge did not first make full tender and

17   thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western*

18   *Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action

19   'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid

20   tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

21        "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

22   paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v.*

23   *Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain

24   an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475,

25   477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

26        Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do

27   equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

28   plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

1   into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d

2   791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

3   is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

4   92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

5   law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial

6   foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820,

7   821, 134 Cal.Rptr.2d 162 (2003).

8          "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

9   Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

10  necessary on his part to complete the transaction, and must fairly make known his purpose without

11  ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

12  made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

13  1165, 246 Cal.Rptr. 421 (1988).  The debtor bears "responsibility to make an unambiguous tender of

14  the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

15  Cal.App.3d at 1165, 246 Cal.Rptr. 421.

16         The absence of allegations of Ms. Dooms' tender or ability to tender dooms her claims to

17  challenge the foreclosure sale.  Her purported claim to cure default is insufficient.

18                                    **Unfair Business Practices**

19         The complaint's ninth claim attempts to invoke California's Unfair Competition Law ("UCL"),

20  Cal. Bus. & Prof. Code, §§ 17200, et al.  The UCL claim alleges that "Defendants' business acts and

21  practices, as alleged herein, in violation of the non-judicial foreclosure law . . . constitute 'unlawful

22  violations under the UCL."

23                                           ***Standing***

24         B of A disputes Ms. Dooms' standing to pursue a UCL claim with the complaint's failure to

25  allege a cognizable injury.

26         California Business and Professions Code section 17204 limits standing to bring a UCL claim

27  to specified public officials and a private person "who has suffered injury in fact and has lost money or

28  property as a result of the unfair competition."

1    Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

2  part:

3        Any person who engages, has engaged, or proposes to engage in unfair
     competition may be enjoined in any court of competent jurisdiction. The court may make
4    such orders or judgments . . . as may be necessary to restore to any person in interest any
     **money or property**, real or personal, which may have been acquired by means of such
5    unfair competition.  (Bold added.)

6    "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

7  remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

8  950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

9  *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

10    Defendants correctly note the complaint's absence of facts of Ms. Dooms' money or property

11  allegedly lost due to a UCL violation or "as a result of unfair competition."  B of A raises a valid point

12  that the complaint merely alleges that Ms. Dooms lost her home due to legally enforceable foreclosure.

13  The complaint lacks sufficient allegations of Ms. Dooms' standing to warrant dismissal of the UCL

14  claim.

15                    ***Unlawful, Unfair Or Fraudulent***

16    B of A further faults the complaint's failure to allege a predicate legal violation to support a UCL

17  claim.

18    "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

19  unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

20  718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

21  competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

22  *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

23  anything that can properly be called a business practice and that at the same time is forbidden by law.

24  *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

25  Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'"

26  *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002)

27  (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

28    The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548.

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint is insufficient to establish that B of A engaged in unlawful, unfair or fraudulent business practices under the UCL.  In the absence of violation of a borrowed law, a UCL claim fails in

1    that it cannot rest on alleged irregularities in the loan transaction or foreclosure proceedings, especially

2    given that B of A was not involved in foreclosure.  The complaint lacks viable claims under the

3    California common law and statutes.  The complaint points to no predicate violation of law.  The

4    complaint lacks reasonable particularity of facts to support a UCL claim.  Reliance on other invalid

5    claims alleged in the complaint fails to support a viable UCL claim.  The UCL claim lacks particularity

6    of fraudulent circumstances, such as a misrepresentation, for a UCL claim, especially given failure of

7    fraud and related claims, as discussed above.  The complaint lacks facts to describe how consumers were

8    deceived.  The complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claim's

9    dismissal.

10                    **Cancellation Of Trustee's Deed And Setting Aside Trustee's Sale**

11           The complaint's tenth and eleventh claims challenge Cal-Western Reconveyance's ability to act

12   as trustee in that its trustee substitution was recorded on June 9, 2009, after MERS transferred beneficial

13   interest under the first DOT to Ocwen on April 1, 2009.  The claims allege that Cal-Western lacked

14   power of sale to foreclose under the first DOT to warrant cancellation of the trustee's deed and setting

15   aside the trustee's sale.

16           As to trustee's deed cancellation and setting aside the trustee's sale, B of A raises similar attacks

17   as to those against the complaint's wrongful foreclosure claim and which are discussed above and

18   include the fact that B of A ceased involvement in Ms. Dooms' loan months prior to foreclosure.

19           To challenge foreclosure, "it is necessary for the complaint to state a case within the code

20   sections for which reason it is essential to allege the facts affecting the validity and invalidity of the

21   instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).  A

22   defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in

23   order to maintain any cause of action for irregularity in the sale procedure." *Abdallah,* 43 Cal.App.4th

24   at 1109, 51 Cal.Rptr.2d 286.  "A valid and viable tender of payment of the indebtedness owing is

25   essential to an action to cancel a voidable sale under a deed of trust." *Karlsen*, 15 Cal.App.3d at117, 92

26   Cal.Rptr. 851.  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor

27   can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr.

28   15.

1    Moreover, a request to cancel the trustee's deed is "dependent upon a substantive basis for

2   liability, [and it has] no separate viability." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018,

3   1023, 98 Cal.Rptr.2d 661 (2000).  To attack a non-judicial foreclosure sale, a plaintiff must plead and

4   prove "an improper procedure and the resulting prejudice." *Knapp v. Doherty*, 123 Cal.App.4th 76, 86,

5   n. 4, 20 Cal.Rptr.3d 1 (2004).  In addition, a plaintiff must plead with particularity a claim based on

6   violation of the non-judicial foreclosure statutes.  *Gomez v. Wachovia Mortg. Corp.*, 2010 WL 291817,

7   at p. 6 (N.D. Cal. 2010).

8    The complaint lacks sufficient allegations to overcome presumption of foreclosure validity or

9   to demonstrate prejudice to Ms. Dooms from alleged irregularities.  No allegations suggest that the

10  foreclosure sale was illegal, fraudulent or wilfully oppressive.  The complaint fails to support

11  cancellation of the trustee's deed or setting aside the trustee's sale.

### Quiet Title

13   The complaint's (twelfth) quiet title claim again challenges Cal-Western Reconveyance's power

14  to foreclose based on its substitution as first DOT trustee.

15   B of A reasserts that it was not involved in foreclosure and challenges the quiet title claim's

16  failure to allege elements and Ms. Dooms' tender of amount owed under her loan.

17   California Code of Civil Procedure section 760.010 provides for an action "to establish title

18  against adverse claims to real or personal property or any interest therein."  California Code of Civil

19  Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

20    1.    A legal description and street address of the subject real property;

21    2.    The title of plaintiff as to which determination is sought and the basis of the title;

22    3.    The adverse claims to the title of the plaintiff against which a determination is sought;

23    4.    The date as of which the determination is sought; and

24    5.    A prayer for the determination of the title of the plaintiff against the adverse claims.

25  The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or

26  proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., §

27  760.030.

28   The complaint lacks the property's legal description and facts as to the title of which Ms. Dooms

1  seeks determination and the basis of Ms. Dooms' purported title given her inability to tender amounts

2  due on her loans. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of

3  the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v.*

4  *Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The

5  complaint lacks facts that Ms. Dooms is a rightful owner of the property with satisfaction of deed of trust

6  obligations and thus lacks a properly pled quiet title claim.

7      As explained above, a purported quiet title claim is doomed in the absence of a tender of amounts

8  owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

9  paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may

10  not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust,

11  or have his title quieted against the purchaser at such a sale, even though the statute of limitations has

12  run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see*

13  *Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not

14  maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39

15  Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his

16  debt. The cloud upon his title persists until the debt is paid.").

17      "A valid and viable tender of payment of the indebtedness owing is essential to an action to

18  cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. An

19  "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action

20  which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7

21  (1901).

22      Ms. Dooms is unable to re-acquire good title to the foreclosed property without paying or

23  tendering the outstanding indebtedness. With the complaint's absence of a meaningful ability or

24  willingness to tender the indebtedness, a purported quiet title claim fails. This Court is not in a position

25  to award Ms. Dooms a windfall.

26                              **Injunctive Relief**

27      The complaint's thirteenth claim alleges that injunctive relief "is authorized and appropriate to

28  remedy the violations of law and equity and resulting harm, or threats of harm" to Ms. Dooms.

1   B of A argues that the complaint "seeks to enjoin post-foreclosure eviction" involving Freddie

2   Mac as trustee's sale purchaser, not B of A/Countrywide.  B of A contends that "injunctive relief is a

3   remedy, and it cannot be pursued without a valid, underlying claim."

4   "Equity will not interpose its remedial power in the accomplishment of what seemingly would

5   be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there

6   has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*,

7   *v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is

8   a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief

9   may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

10   The complaint lacks facts to support injunctive relief, especially given the absence of alleged

11   facts of B of A/Countrywide's involvement in foreclosure or related irregularities.  No viable claim

12   supports injunctive relief to doom an injunctive relief claim for Ms. Dooms.  In other words, injunctive

13   relief fails with the complaint's claims.

14   ### Declaratory Relief

15   The complaint's fourteenth claim seeks declarations that "Defendants" are precluded to evict Ms.

16   Dooms because "the foreclosure sale was void" and that Ms. Dooms "is entitled to loan modification."

17   B of A contends that the declaratory relief claim fails in that the complaint's allegations "go

18   nowhere."

19   The complaint lacks a viable declaratory relief claim.  The Declaratory Judgment Act ("DJA"),

20   28 U.S.C. §§ 2201, 2202, provides in pertinent part:

21   In a case of actual controversy within its jurisdiction . . . any court of the United
     States, upon the filing of an appropriate pleading, may declare the rights and other legal

22   relations of any interested party seeking such declaration, whether or not further relief
     is or could be sought.  Any such declaration shall have the force and effect of a final

23   judgment or decree and shall be reviewable as such.

24   28 U.S.C. §2201(a).

25   The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

26   300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

27   *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

28   "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

1   (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

2   a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142,

3   143 (9th Cir. 1994).

4          Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying

5   and settling the legal relations in issue, and (2) when it will terminate and afford relief from the

6   uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738

7   F.2d 1462, 1470 (9th Cir.1984).

8          As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

9   controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

10  the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

11  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

12          A justiciable controversy is thus distinguished from a difference or dispute of a
        hypothetical or abstract character; from one that is academic or moot. . . . The
13      controversy must be definite and concrete, touching the legal relations of parties having
        adverse legal interests. . . . It must be a real and substantial controversy admitting of
14      specific relief through a decree of a conclusive character, as distinguished from an
        opinion advising what the law would be upon a hypothetical state of facts.

15

16  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

17         The failure of the complaint as a whole demonstrates the absence of an actual controversy subject

18  to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which

19  otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655

20  F.2d 938, 943 (9th Cir. 1981).  In the absence of a viable claim, the complaint fails to support declaratory

21  relief.

22                          **Attempt At Amendment And Malice**

23         Since the complaint's claims are barred as a matter of law, Ms. Dooms is unable to cure her

24  claims by allegation of other facts and thus is not granted an attempt to amend.

25         Moreover, this Court surmises that Ms. Dooms has brought this action in absence of good faith

26  and that Ms. Dooms seeks to exploit the court system solely for delay or to vex B of A.  The test for

27  maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

28  applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

                                          33

F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice this action against B of A;[9]

2.      DIRECTS the clerk to enter judgment in favor of defendant Bank of America, N.A., successor in interest to Countrywide Bank, FSB, and against plaintiff Susana Islas Dooms, in that there is no just reason to delay to enter such judgment given that Ms. Dooms' claims against B of A and its alleged liability are clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b); and

3.      ORDERS Ms. Dooms' counsel, no later than April 6, 2011, to file papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation.

**This Court ADMONISHES Ms. Dooms' counsel that this Court will dismiss this action against defendant Cal-Western Reconveyance Corporation if Ms. Dooms' counsel fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant Cal-Western Reconveyance Corporation. This Court further ADMONISHES Ms. Dooms' counsel of potential liability under 28 U.S.C. § 1927 and other authorities.**

IT IS SO ORDERED.

**Dated:    March 30, 2011                        /s/ Lawrence J. O'Neill**
                                                     UNITED STATES DISTRICT JUDGE

---

[9]     Sua sponte dismissal of Ms. Dooms' claims renders moot her request to continue the April 25, 2011 hearing.